Wilmer J. Patlow, J.
Petitioner is the owner of a 39-acre parcel of land located in the Town of Gates. In August of 1975 petitioner entered into a $550,000 contract to sell the land for a bottling plant. However, on September 1, 1975, article 24 of the Environmental Conservation Law, entitled Freshwater Wetlands, went into effect, and in November of 1975 petitioner was informed that approximately one half of his property might be declared a wetland and hence subject to statutory regulation.
Without conceding that the subject property was a wetland within the meaning of the act, petitioner applied for an interim permit as provided by subdivision 4 of section 24-0703 of the statute. This application was made on December 31, 1975 but was subsequently withdrawn without the commissioner ever having an opportunity to grant, deny, limit, or otherwise rule on such application.
On January 15, 1976, petitioner, again pursuant to subdivision 4 of section 24-0703 inquired of the department as to whether the subject property would or would not be designated a freshwater wetland subject to regulation. The department replied in the affirmative.
Petitioner now seeks judicial review of this affirmative determination. Respondents raise no objection to petitioner’s right to judicial review of that determination. However, should the court uphold respondents’ determination that petitioner’s property is subject to wetland regulation, then petitioner seeks an order directing the commissioner to proceed under the Condemnation Law to acquire petitioner’s property.
The thrust of petitioner’s argument against respondents’ determination is that if indeed his property contains wetlands at all, they were artifically created, and that the statute is applicable only to "natural” wetlands.
The court is unable to accept this distinction. The public policy behind the act was clearly stated in section 24-0103 of the statute which reads as follows:
"§ 24-0103. Declaration of policy.
"It is declared to be the public policy of the state to preserve, protect and conserve freshwater wetlands and the *543 benefits derived therefrom, to prevent the despoliation and destruction of freshwater wetlands, and to regulate use and development of such wetlands to secure the natural benefits of freshwater wetlands, consistent with the general welfare and beneficial economic, social and agricultural development of the state.” That policy is clearly applicable to all freshwater wetlands. To hold otherwise would not only vitiate the effect of the law, but would require respondents to undertake the inordinate burden of determining the original origin of each and every proposed wetland throughout the State. Certainly, if the Legislature intended to create the distinction petitioner urges, it could have done so in a clear and unequivocal manner.
Therefore, the court finds respondents’ determination that approximately one half of petitioner’s property is a wetland, as defined by law, to be proper.
Having so found, we now turn to petitioner’s contention that such finding, in and of itself, constitutes a "taking” of petitioner’s land and therefore the court should require the commissioner to proceed to condemnation.
Petitioner’s position is based upon two separate and distinct subdivisions of the statute which appear under two separate and distinct headings.
In order to properly assess petitioner’s contention, one must not only look at the two afore-mentioned sections but also at the over-all statutory scheme.
Petitioner asserts that what he did pursuant to subdivision 4 of section 24-0703 entitles him to his requested relief.
The pertinent subdivision reads as follows:
"§ 24-0703. Applications for permits.
"4. Prior to the promulgation of the final freshwater wetlands map in a particular area and the implementation of a freshwater wetlands protection law or ordinance, no person shall conduct, or cause to be conducted, any activity for which a permit is required under section 24-0701 of this article on any freshwater wetland unless he has obtained a permit from the commissioner under this section. For this purpose, the department shall reply to all inquiries as to whether or not a given parcel of land will be designated a freshwater wetland subject to regulation and give a definite answer in writing as to whether it will or will not be so designated such within thirty days of such request. Such answer in the affirmative *544 shall be reviewable by the applicant pursuant to title eleven of this article; such an answer in the negative shall be a complete defense to the enforcement of this article as to such parcel of land. In addition to the other requirements of this section, such person shall include in his application and demonstrate to the satisfaction of the commissioner that he will suffer a hardship if he is not permitted to make such application until the freshwater wetlands map is promulgated. The commissioner may by regulation adopted after public hearing exempt categories or classes of wetlands or individual wetlands which he determines not to be critical to the furtherance of the policies and purposes of this article.” (Emphasis added.)
A careful reading of this subdivision reveals the following: 1. That it is intended only for persons such as petitioner who do not wish to await the promulgation of the final freshwater wetlands map in their area and therefore are desirous of obtaining an interim permit. 2. That the department must reply within 30 days to all inquiries as to whether or not a parcel of land will be designated a wetland. 3. That only if an inquiry is given an affirmative response must a petitioner make application for an interim permit. 4. Hardship necessitating interim relief must be shown as part of that application.
In the case at bar, petitioner has done no more than make the necessary inquiry as to whether or not his land would be designated a freshwater wetland subject to regulation. Upon receiving an affirmative determination, but without completing the permit application contemplated in both the title of the section under which the subdivision is found, as well as the very wording (emphasized above by italics) of the subdivision itself, petitioner seeks to invoke the relief found in subdivision 6 of section 24-0705.
To properly evaluate petitioner’s right to the relief sought, one must look at all the relevant subdivisions of section 24-0705.
They are as follows:
"§ 24-0705. Granting permits.
"1. In granting, denying or limiting any permit, the local government or the commissioner shall consider the effect of the proposed activity with reference to the public health and welfare, fishing, flood, hurricane and storm dangers, and protection or enhancement of the several functions of the *545 freshwater wetlands and the benefits derived therefrom which are set forth in section 24-0103 of this article * * *
"3. In granting a permit, the local government or the commissioner may limit the same or impose conditions or limitations designed to carry out the public policy set forth in this article * * *
"4. The local government or the commissioner shall state upon the record findings and reasons for all actions taken pursuant to this section.”
"5. Review of the determination of the local government or of the commissioner shall be, within a period of thirty days after the filing thereof, pursuant to the provisions of title eleven of this article or article seventy-eight of the civil practice law and rules. Any owner of the wetland affected and any resident or citizen of the local government shall be deemed to have the requisite standing to seek review.”
"6. In the event that the court finds the action reviewed constitutes a taking without just compensation, and the land so regulated merits protection under this article, the court may, at the election of the commissioner, either (i) set aside the order of (ii) require the commissioner to proceed under the condemnation law to acquire the wetlands or such less than fee rights therein as have been taken.” (Emphasis added.)
A reading of all of the relevant subdivisions reveals that subdivision 6 does not, and cannot, stand separate and apart.
The statutory scheme is clear and precise. Subdivision 6 comes into play only if there is an "action” to be "reviewed” (i.e., the granting, denying, or limiting of any permit) and only after the commissioner has stated upon the record findings and reasons for such "action.”
No such action having taken place in the case at bar, there could of course have been no record of findings and reasons. Absent these prerequisites the court finds subdivision 6 inapplicable.
Going beyond the confines of statutory interpretation, the court would point out that if petitioner’s position were to prevail, any party who received an affirmative response to his inquiry of the commissioner as to whether or not his property was subject to wetlands regulation, could immediately force respondents to proceed to condemnation. Bearing in mind that the statute requires the commissioner to respond to all such inquiries within 30 days, it is inconceivable that the Legisla *546 ture intended such result. What the court believes the Legislature did intend is an orderly and proper procedure where an applicant, after being notified that his property would be subject to regulation, proceeded to apply for an interim permit and only after the commissioner acted upon such permit could the applicant seek relief by condemnation.
The court having found that respondents’ determination that petitioner’s property contains wetlands subject to regulation is proper; and the court having further found that petitioner is not entitled to an order requiring the commissioner to take petitioner’s property through condemnation, the petition is hereby dismissed.