OPINION OF THE COURT
William H. Keniry, J.
This CPLR article 78 proceeding in the nature of mandamus *979 was commenced to compel the Comptroller of the State of New York to pay petitioner the sum of $61,333 with appropriate interest pursuant to a judgment of the Court of Claims entered in a real property appropriation proceeding. By court order, the Attorney-General of the State of New York and four individuals, who shall be collectively referred to as the Ryders, were added as respondents.

Procedural History and Facts

The procedural history and underlying facts must be recited before discussion and analysis of the legal issues can take place. In 1890 Antoinette B. Merritt conveyed real property located in the Town of Carmel, Putnam County, to the New York Northern Railway Company. The deed contained a right of reverter which provided that upon the failure of the grantee to locate, establish and maintain a railroad depot for the Village of Carmel upon the property, the land shall revert to the grantor, her heirs or assigns.
As it happened, the property, sometime before July 31, 1968, ceased being used for railroad purposes.
On July 31, 1986, the State filed an appropriation map for the subject parcel of land which consisted of 86,000+ square feet. The petitioner and the Ryders were heirs of Antoinette B. Merritt.
Petitioner filed a claim for damages against the State in the Court of Claims on October 28, 1987. Respondents Ryders did not file a notice of claim. Petitioner’s claim was tried before the Court of Claims (Henry W. Lengyel, Judge of the Court of Claims) on April 26, 1989 and May 24, 1989. During the trial petitioner contended that he was the owner of one half of the property appropriated by virtue of the right of reverter and his status as an heir of Antoinette B. Merritt. The State, at trial, contended that claimant owned one third of the property under the right of reverter. The court issued a bench decision on May 24, 1989 and an amended bench decision on September 18, 1989 finding that claimant owned one third of the appropriated property and that claimant was entitled to an award in the amount of $61,333, plus appropriate interest, which reflected one third of the over-all value placed upon the property by the Court of Claims.
Before a judgment was entered on the court’s decision, the State moved to stay entry of judgment, reopen the trial and implead the Ryders on a question of title. The State argued *980 that the Attorney-General was purportedly unable to certify petitioner’s title to the property based upon the failure of the petitioner to present a general release signed by the Ryders. The Attorney-General had been contacted by an attorney representing the Ryders after the trial was concluded and the attorney contended that the Ryders were fee owners of the entire parcel under a quitclaim deed from William A. Schilling dated June 28, 1982. The Ryders, according to the Attorney-General, had not been served with a notice of the appropriation and their time to file a notice of claim against the State had not commenced to run.
Petitioner cross-moved in the Court of Claims for an order directing the State to pay him the sum of $61,333 with appropriate interest.
On June 4, 1990 Judge Lengyel issued an order which denied the State’s motion to reopen the trial and for permission to implead the Ryders on the question of title. Judge Lengyel granted petitioner’s cross motion to the extent that the Clerk of the Court of Claims was directed to enter judgment as set forth in the court’s amended bench decision of September 18, 1989. On June 13, 1990 the order of Judge Lengyel was served upon the Attorney-General. On June 18, 1990 a judgment in favor of petitioner was entered in the office of the Clerk of the Court of Claims. On June 22, 1990 the Attorney-General filed a certificate of no appeal from the judgment.
Petitioner thereafter tried to secure payment of the judgment. On September 14, 1990 the Attorney-General notified petitioner’s attorney that the Attorney-General would not certify the judgment for payment under section 20 (6) of the Court of Claims Act. The Attorney-General wrote that "a satisfactory abstract of title and certificate of search as to incumbrances, showing the person demanding such damages to be legally entitled thereto” could not be filed by the Attorney-General in view of the Ryders’ claim that they were the sole fee owners of the property. The Attorney-General’s letter stated that "As their [the Ryders’] claim does not appear to be completely without merit, this office cannot, without a release executed by the Ryders, certify that your client [the petitioner] is legally entitled to this award”. On October 31, 1990 this CPLR article 78 proceeding was commenced.
Supreme Court denied a motion by the Comptroller to *981 dismiss the petition and granted a motion impleading the Ryders and the Attorney-General. The court directed the Attorney-General and the Ryders to file an answer to the petition "setting forth the reason or reasons why the proceeds which are the subject of the petition should be paid to them [the Ryders] and not to the petitioner”. Respondents Ryders filed a verified answer which included a cross petition against petitioner in which they alleged that they were the sole fee owners of the property appropriated by the State and that petitioner has no ownership interest in the appropriated property. The Ryders thus contend that they are entitled to the entire Court of Claims award.
The petitioner Harold Henion moves for summary judgment granting the relief sought in the petition. Respondents Ryders cross-move for summary judgment on their cross petition and seek a declaration that they are the sole owners of the property in question. The respondents Comptroller and Attorney-General take no position with respect to the merits of the cross petition and simply request that the court make a binding determination of the adverse claims of title between petitioner and the Ryders. Respondents Comptroller and Attorney-General aver that once the court determines the competing claims to title the Attorney-General will certify the judgment for payment as required by Court of Claims Act § 20 (6) and, that upon receipt of the documentation required by law, the Comptroller will pay the proceeds to the proper party or parties.

The Issues

Petitioner and respondents Ryders present arguments focusing on the ownership of the appropriated property. Respondents Ryders contend that they are the sole fee owners of the property and are entitled to the full award made by the Court of Claims. They argue that petitioner’s claim of ownership by virtue of the right of reverter is barred by RPAPL 612. Section 612 imposes a 10-year Statute of Limitations for commencing an action to recover possession of real property founded upon a claim of reverter. Petitioner argues that section 612 does not apply to his claim.
The court need not, however, reach the issue of ownership to resolve what it perceives to be the central issue raised in the petition, that is, whether the Comptroller and the Attorney-General should be directed to comply with the judgment *982 of the Court of Claims and pay the sum of $61,333 plus accrued interest to the petitioner.

The Law

All parties to this proceeding have overlooked, in their presentations, a very basic and a very time-honored principle of law which prohibits the relitigation of issues decided against a party, or one in privity with a party, in an earlier judicial proceeding.
The principle, to which the court refers, is res judicata. "[T]he doctrine of res judicata gives 'binding effect to the judgment of a court of competent jurisdiction and prevents the parties to an action, and those in privity with them, from subsequently relitigating any questions that were necessarily decided therein’ (Matter of Shea, 309 N. Y. 605, 616)” (Watts v Swiss Bank Corp., 27 NY2d 270, 277). Res judicata applies to final judgments rendered by the Court of Claims (Jones v Young, 257 App Div 563).
The State respondents in this case, the Comptroller and the Attorney-General, were not actual parties to the Court of Claims action in which petitioner was found by the trial court to be a one-third owner of the property in question.
For res judicata to apply, the State respondents must be found to be in privity with the State of New York. "It has been said that the term privity does not have a technical and well-defined meaning. It denominates a rule, however, to the effect that under the circumstances, and for the purposes of the case at hand, a person may be bound by a prior judgment to which he was not a party of record (Restatement, Judgments, § 83, Comment a). It includes those who are successors to a property interest, those who control an action although not formal parties to it, those whose interests are represented by a party to the action, and possibly coparties to a prior action (Restatement, Judgments, §§ 81-90).” (Watts v Swiss Bank Corp., supra, at 277.)
On this threshold issue, the court has no difficulty in concluding that the Attorney-General and the Comptroller as officers and department heads of the State of New York (see, NY Const, art V, § 1) are in privity with the State for purposes of applying the doctrine of res judicata.
It would indeed do great violence to the doctrine of res judicata were this court, a court of coordinate jurisdiction to the Court of Claims, to fail to honor a judgment of the Court *983 of Claims and refuse to compel its enforcement. The issue of petitioner’s entitlement to the damages awarded to him by the Court of Claims has been finally determined. By refusing to fulfill his responsibilities under section 20 (6) of the Court of Claims Act, the Attorney-General is mounting a collateral attack upon the validity of the Court of Claims judgment; an action which this court will not condone.
The court understands the Attorney-General’s dilemma and the reason why he is reluctant to act. Since the Ryders may still be entitled to file a claim against the State, it may come to pass that the Ryders, in a subsequent action, may be found to be the sole owners of the appropriated property. The State may be required to pay twice for the petitioner’s one-third interest. The Attorney-General’s dilemma is not of this court’s or of the petitioner’s making. The court finds no basis in law or in equity to grant relief to the Attorney-General in this case.
Mandamus is a remedy which lies to compel the performance of a ministerial act, as opposed to a discretionary act, by a government agency or official (Klostermann v Cuomo, 61 NY2d 525).
In People ex rel. Palmer v Travis (223 NY 150), the Court of Appeals sustained the issuance of a writ of mandamus directed to the Attorney-General in a case with facts similar to the case at bar. In 1915 the Court of Claims in Palmer (supra) awarded damages of almost $1 million to claimants for land appropriated by the State. The judgment was affirmed by both the Appellate Division and the Court of Appeals. The award was not paid by the Comptroller. The claimants applied for a writ of mandamus. The Attorney-General opposed the writ on three grounds including the argument that the Attorney-General was not able to file a satisfactory abstract of title and certificate of search showing that the claimants were legally entitled to the award. The Court of Appeals held that the courts, in the appropriation proceeding, had conclusively determined the question of title and thus sustained issuance of the writ. "Neither the comptroller nor the attorney-general may say arbitrarily we are not satisfied with the abstract; it does not show the claimant entitled to damages. In the last analysis the question is one of law. Is the abstract satisfactory in form? Does it show what the statute requires it to show? That question is to be answered by the courts. Undoubtedly, the comptroller does and should consult with the attorney-general. But on neither officer rests the ultimate decision. *984 Only if there is some reasonable doubt should their rejection of the abstract be sustained. Here, however, the referee, the Appellate Division and this court have in effect held that the abstract filed by the relators does show title in them” (223 NY, at 155, supra).
Mandamus has been employed as a remedy to compel the Attorney-General and Comptroller to issue payment or to issue documents required as a condition to payment (Board of Educ. v Levitt, 42 AD2d 372 [compel reimbursement of interest paid on revenue anticipation notes]; Matter of Silverman v Lefkowitz, 41 AD2d 442 [compel payment of highway appropriation award]; Matter of Riccotta v Lefkowitz, 19 AD2d 940 [direct filing of abstract of title and search required by section 20 (6) of the Court of Claims Act]).
The court concludes that the Attorney-General should be compelled by writ of mandamus to fulfill his responsibilities under section 20 (6) of the Court of Claims Act. The Court of Claims rendered a final judgment that petitioner was the owner of one third of the property appropriated at the time of the taking and was entitled to damages in the sum of $61,333. The Attorney-General’s duty to comply with the requirements of section 20 (6) is ministerial in light of the conclusive judgment of the Court of Claims. He must, therefore, issue all documents necessary to enable the Comptroller to pay the judgment entered in petitioner’s favor. The petitioner’s motion for summary judgment is granted, in part, and the petition is granted, without costs, to the extent that a writ of mandamus directed to the Attorney-General is issued directing the Attorney-General to forthwith file all documents with the Comptroller required by section 20 (6) of the Court of Claims Act.
The Comptroller has indicated that, once the necessary documents required by section 20 (6) have been filed with his office, payment to petitioner will be made. The court finds no reason to issue a writ of mandamus directed to the Comptroller. The court assumes that the Comptroller will fulfill his responsibilities according to law.
The issue of the respondents Ryders’ cross petition must be addressed. Respondents Ryders seek summary judgment declaring that they are the sole owners of the land in dispute. Since the Ryders were not parties to the Court of Claims action, they, of course, are not bound by the findings of fact and conclusions of law made therein. They are free to litigate anew the issue of title vis-á-vis petitioner. The cross petition is *985 in actuality an action to compel the determination of a claim of title to real property (RPAPL art 15).
CPLR 507 provides that the venue of an action affecting title to real property shall be in the county where the property is situated. The property at issue in this proceeding is located in Putnam County. In actions or proceedings affecting the title to real property, the court has inherent power to change the venue of such action or proceeding to the county where the real property is located (Reichenbach v Corn Exch. Bank Trust Co., 249 App Div 539; Matter of Tilles v Williams, 127 Misc 2d 575).
The respondents Ryders’ cross motion for summary judgment is denied without prejudice. The cross petition is transferred on the court’s own motion, sua sponte, from Albany County to Putnam County.